UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
DAWN S. ROBINSON              :
                              :
v.                            :    Civ. No. 3:14CV1227 (HBF)
                              :
CAROLYN W. COLVIN, ACTING     :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :    December 20, 2016
                              :
------------------------------x
```

### RECOMMENDED RULING ON CROSS MOTIONS

Plaintiff Dawn S. Robinson brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security who denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §423(a)(1)(E) and §1382(a)(1). Plaintiff has moved to reverse and remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #15]** is **GRANTED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #19]** is **DENIED**.

**I. ADMINISTRATIVE PROCEEDINGS**

The procedural history of this case is not disputed.

1

Plaintiff filed an application for DIB and SSI on April 7, 2011, alleging disability as of November 1, 2002.[1] [Certified Transcript of the Record, Compiled on November 21, 2014, Doc. #11 (hereinafter "Tr.") 207-13; 214-22]. Plaintiff alleged disability due to "PTSD, anxiety, HBP [high blood pressure], obesity, IBS [irritable bowel syndrome], emotional, and dislexia [sic]." [Tr. 79; 87;]. Plaintiff's claim was denied initially and on reconsideration. [Tr. 76-83; 84-95; 98-108; 109-23].

On February 5, 2013, plaintiff, represented by counsel, appeared before Administrative Law Judge ("ALJ") Kim Griswold for an administrative hearing. [Tr. 36-73]. Vocational Expert ("VE") Raymond Cestar, testified at the hearing. [Tr. 60-72]. On February 22, 2013, ALJ Griswold found that plaintiff was not disabled, and denied her claim. [Tr. 11-31]. Plaintiff's March 28, 2013, request for review of the hearing decision was denied on June 10, 2014. [Tr. 4-6; 7]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse the Commissioner's decision.

---

[1] Plaintiff's last date insured is March 31, 2004. [Tr. 39, 223]. To qualify for DIB under Title II, plaintiff must be found disabled on or before March 31, 2004. [Tr. 39]. As was noted at the hearing on February 5, 2013, plaintiff filed prior DIB and SSI applications on March 27, 2009; September 26, 2006 (with an initial denial date of April 4, 2007); and November 23, 2004. [Tr. 39-40].

**II.   STANDARD OF REVIEW**

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of

3

the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that, in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

### III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1). To qualify for supplemental security income, an individual must be eligible on the basis of income and resources. 42 U.S.C. §1381a.

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot,

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c)(alterations added) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe"); 42 U.S.C. §1382c(a)(3)(B), 20 C.F.R. §416.920(c).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional

6

>     capacity to perform his past work. Finally, if the
>     claimant is unable to perform his past work, the
>     Secretary then determines whether there is other work
>     which the claimant could perform. Under the cases
>     previously discussed, the claimant bears the burden of
>     proof as to the first four steps, while the Secretary
>     must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in

7

light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

**IV.   THE ALJ'S DECISION**

Following the above-described five step evaluation process, ALJ Griswold concluded that plaintiff was not disabled under the Social Security Act. [Tr. 11-31]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 1, 2002, the alleged disability onset date. [Tr. 14].

At step two, the ALJ found that plaintiff had the severe medical impairments of obesity (BMI 37-41), polysubstance dependence (alcohol, cocaine and opioid dependence in full remission, but periods of ongoing cannabis abuse), diabetes mellitus, posttraumatic stress disorder ("PTSD"), depression, and bipolar disorder. [Tr. 14]. The ALJ found that plaintiff's hepatitis C and asthma were non-severe impairments. [Tr. 14-15].

At step three, the ALJ found that plaintiff's impairments, including the substance use disorders, met the criteria listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders) through June 2010.[2]

---

[2] Defendant argues that "[p]laintiff does not dispute the ALJ's determination that her substance use disorder was a contributing factor material to the determination of disability from the alleged onset date, November 1, 2002 to June 2010. [Doc. #19-1

8

[Tr. 15-20].

After June 2010, the ALJ found that plaintiff's substance abuse was no longer material to the finding of disability. [Tr. 20-21]. The ALJ found that since June 2010, when plaintiff had longer periods of abstinence with a few relapses, she did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d) and 416.920(d)), specifically listings 12.04, 12.06 and 12.09. [Tr. 21]. The ALJ also conducted a psychiatric review technique and found that since June 2010, plaintiff had mild limitations in his activities of daily living, and moderate limitations in social functioning, concentration, persistence and pace, and no episodes of extended duration decompensation. [Tr. 21-23].

Before moving on to step four, the ALJ found that since 2010, plaintiff had the RFC to perform

> Medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: the claimant can frequently stoop, crouch, crawl, kneel, balance and climb ramps and stairs. She cannot climb ladders, ropes or scaffolds.

---

at 4-6 (citing Tr. 31)]. Rather, "[p]laintiff's arguments pertain to the ALJ's analysis and findings that are relevant to the period of June 2010 through the date of the ALJ's decision." Id. (citing Doc. #15-2 at 15-33). The Court agrees that plaintiff has not presented an argument challenging the ALJ's finding that substance abuse was a contributing factor material to the finding of disability for the period of November 1, 2002 through June 2010. Nevertheless, plaintiff seeks documents from this period from mental health providers and substance abuse programs. [Doc. #15-2 at 15-17].

9

> The claimant can understand, remember and carry out simple, routine and repetitive tasks throughout an ordinary workday and workweek with normal breaks on a sustained basis. The claimant cannot tolerate interaction with the general public. She can tolerate occasional contact with coworkers without teamwork or collaboration. She can tolerate occasional interaction for supervisory work related matters with a supervisor.

[Tr. 23].

At step four, the ALJ found plaintiff was unable to perform her past relevant work as a nurse's aide. [Tr. 30]. At step five, considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. [Tr. 30-31].

## V. DISCUSSION

On appeal, plaintiff asserts the following arguments in favor of remand.

1. The ALJ failed to develop the record;
2. The ALJ's analysis of the evidence is fatally flawed;
3. The ALJ failed to assess plaintiff's impairments, including her obesity, in combination; and
4. The ALJ's analysis of plaintiff's residual functional capacity is flawed.

**Developing the Record**

Before determining whether the ALJ's findings are supported by substantial evidence, the Court "must first be satisfied that

the claimant has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990)(internal quotation marks and citations omitted). "The Act must be liberally applied, for it is a remedial statute intended to include not exclude." Id. (citation omitted). Even when a claimant is represented by counsel, it is the well-established rule in our circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112–13 (2d Cir. 2009)(quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009); see Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004) ("[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, 20 C.F.R. §404.1512(d)-(f) (1995), and exists even when, as here, the claimant is represented by counsel." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). Social Security disability determinations are "investigatory, or inquisitorial, rather than adversarial." Butts, 388 F.3d at 386 (citation and

11

internal quotation marks omitted). "[W]here the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." Id. at 385 (citation omitted).

The Court finds that the ALJ did not adequately fulfill her duty to develop the record in this case. Plaintiff correctly pointed out several material omissions in the administrative record where treatment is referenced but no treatment records are provided. [Doc. #15-2 at 16-17 (citing Tr. 379 (referencing treatment with Dr. Savage for bipolar disorder); 318 (referencing treatment at Morris Foundation for drug problems); 368 (referencing participation in ATP Foundation's Methadone Maintenance Program; Women Children's Program; and High Risk program at Yale Pregnancy); 358-60 (noting a three page record for a five day inpatient stay at Yale New Haven Psychiatric Hospital that contains references to treatment at Connecticut Mental Health Center and follow-up treatment at the Dual-Diagnosis Intensive Outpatient Program; and at Acute Service); 337 (referencing three month residential treatment at the Morris Foundation and residential treatment at the Elm City Adult and Children's Center). Similarly, there are repeated references to incarceration but medical records from the Department of Corrections consist of one page. (Tr. 42-43 (plaintiff testifying in 2013 that she was incarcerated two years ago for

larceny); 318 (noting 2002 incarceration for violating probation); 336 (one page initial psychiatric evaluation dated 8/24/06 from Connecticut Department of Correction); 338 (plaintiff reporting in 2007 that she was arrested for assault twice and larceny six times and incarcerated three times); 368 (noting 2008 release from Niantic Correctional facility).

At the hearing, plaintiff testified to serial homelessness, moving from town to town and as a result changing health care providers often. From May through August 2012, she testified that she treated at Hall-Brooke Behavioral Health Services in Norwalk, followed by St. Mary's Behavioral in Waterbury, Northside Cornell, and was scheduled to begin treatment at Hill Health Center. See Tr. 47-50. The record only contains a discharge summary dated August 7, 2012, from Hall-Brooke Behavioral Health Services stating that plaintiff stopped attending the program, but does not include the treatment records for the period of May 29 through August 7, 2012 before discharge. [Tr. 408-10]. There are no treatment records after August 2012 from any health care provider. Plaintiff testified that she lived in drug houses, abandoned buildings, backyards and with abusive family members and visited emergency rooms to get medication refills. [Tr. 52; 55]. There were no emergency room treatment records submitted. The Court finds that this

testimony triggered an obligation to make efforts to obtain these records, if they exist.

"The duty to develop the record is heightened in cases where the claimant is mentally impaired." Dervin v. Astrue, 407 F. App'x 154, 156 (9th Cir. 2010). Here, plaintiff has a history of substance abuse, dual mental health diagnoses and treatment, and several inpatient hospitalizations for substance abuse. Poverty, multiple incarcerations and homelessness is also a significant contributing factor in accessing care and treatment records.[3] See Schultz v. Astrue, 362 Fed. App'x 634, 636 (9th Cir. 2010)("We hold, however, that the ALJ failed to develop the record with respect to Schultz's mental impairments, a duty 'triggered ... when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'")(quoting Mayes v. Massanari, 276 F.3d 453, 459-60)

---

[3] Indeed, at the time of the hearing plaintiff was under probationary supervision. [Tr. 49-50]. Plaintiff also testified to ongoing cannabis dependence through August 2012. [Tr. 47; see Tr. 408]. As a requirement of her supervision, she stated that she was drug tested and participating in group sessions. [Tr. 50]. "The claimant bears the burden of proving that drug or alcohol addiction was not a contributing factor material to the disability determination." Newsome v. Astrue, 817 F. Supp. 2d 111, 126 (E.D.N.Y. 2011). These test results and treatment records may be helpful in determining whether plaintiff is disabled when her substance abuse is in remission.

(9th Cir. 2001)). Determining the extent of plaintiff's mental health impairment when her substance abuse is in remission will require access to all available records of past treatment. See Dervin, 407 Fed. App'x at 156 ("In cases of chronic mental impairment such as this one, the ALJ is required to gather all records of past treatment.").

Further, there is a paucity of treatment records for plaintiff's physical impairments; Hepatitis C, asthma, obesity and diabetes mellitus, conditions that plaintiff asserts limit her functioning, impact her ability to work and, in combination with her mental impairments, warrant a finding of disability. If there are records that may assist the Commissioner in assessing her physical functional limitations, plaintiff should have an opportunity to submit them.

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's capabilities; it is to review the ALJ's decision for any reversible error. Whether there is substantial evidence supporting the plaintiff's view is not the question here. In light of the gap in the record, the Court remands the case for further development of the evidence.

**VI. CONCLUSION**

For the reasons stated, plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #15]** is **GRANTED.**

This case is remanded for development of the record as to plaintiff's physical and mental impairments. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #17]** is **DENIED**.

This is a recommended ruling. Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of the receipt of this order. See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Impala v. United States Dept. of Justice, --- Fed. App'x ---, 2016 WL 6787933, at *1 (2d Cir. Nov. 15, 2016)(summary order)(failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); cf. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to assign this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part. See Fed. R. Civ. P. 72(b)(3); D. Conn. L. Civ. R. 72.1(C)(1) for Magistrate

Judges.

SO ORDERED at Bridgeport this 20th day of December 2016.

　　　　　　　　　　　　　　　／s／_____
　　　　　　　　　　　　　　HOLLY B. FITZSIMMONS
　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE